# United States District Court
# Central District of California

| | |
|---|---|
| ALEJANDRA GARCIA,<br><br>            Plaintiff,<br><br>    v.<br><br>NRI USA, LLC; DECTON INC.;<br>DECTON SOUTHWEST INC.; DECTON<br>HR INC.; DECTON CORPORATE<br>SERVICES INC.; DOES 1 through 50,<br><br>            Defendants. | Case № 2:17-CV-08355-ODW-GJS<br><br>**ORDER DENYING DEFENDANTS'**<br>**MOTION TO COMPEL**<br>**ARBITRATION [41]** |

## I.    INTRODUCTION

This is a wage-and-hour putative class action. Before the Court is Defendants' Motion to Compel Arbitration. For the following reasons, the Court **DENIES** Defendants' Motion. (Mot., ECF No. 41.)

## II.    FACTUAL BACKGROUND

Defendants Decton, Inc., Decton Corporate Services, Inc., Decton Health Services, Inc., and Decton Southwest, Inc. (collectively "Decton") are a temporary staffing agency. (Decl. of Nicole Marquardt ("Marquardt Decl.") ¶ 4, ECF No. 41-2.) Defendant NRI USA, LLC ("NRI") is a warehouse distribution company that ships and delivers goods to businesses and residents throughout the country. (Decl. of Dean Stainton ("Stainton Decl.") ¶ 4, ECF No. 41-1.) Decton provided staffing services to NRI. (Marquardt Decl. ¶ 5.) Decton hired Plaintiff in July 2014, and assigned her to

work for NRI. (*Id.*; First Am. Compl. ("FAC") ¶ 6, ECF No. 28.) Plaintiff worked in NRI's warehouse facility in Los Angeles, California, until March 2017. (FAC ¶ 6; Stainton Decl. ¶ 5.)

On November 15, 2017, Plaintiff initiated this case against Defendants alleging state-law claims under the California Labor Code and Unfair Competition Law. (*Compare* FAC, *with* Compl., ECF No. 1.) In her FAC, Plaintiff added a collective action claim under the Fair Labor Standards Act ("FLSA"). (FAC ¶¶ 69–76.)

On January 25, 2018, Defendants moved to dismiss Plaintiff's claims for lack of jurisdiction and asked, in the alternative, to stay the case pending the Supreme Court's review of the Ninth Circuit's decision in *Morris v. Ernst & Young LLP*, 834 F.3d 975 (9th Cir. 2016). (ECF No. 31.) The Court denied Defendants' Motion on May 21, 2018, and declined to stay the case. (ECF No. 40.)

On June 4, 2018, Defendants moved to compel arbitration, arguing that Plaintiff signed a binding arbitration agreement as a condition of her employment with Decton. (Mot., ECF No. 41.) Defendants also argued that NRI could compel arbitration as an agent of Decton or alternatively on third-party beneficiary and equitable estoppel grounds. (*Id.*) Plaintiff opposed Defendants' Motion on June 18, 2018. (Opp'n, ECF No. 42.) On June 20, 2018, Plaintiff dismissed Decton without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1). NRI replied in support of its Motion to Compel on June 25, 2018. (Reply, ECF No. 47.)[1]

### III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs a contract dispute relating to an arbitration provision when that provision "has a substantial relationship to interstate commerce." *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 234 (2016). When it applies, the FAA restricts a court's inquiry into compelling arbitration to two threshold questions: (1) whether there was an agreement to arbitrate between the

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

parties; and (2) whether the agreement covers the dispute. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (citation omitted). If the answer to both questions is affirmative, the FAA requires the Court to enforce the arbitration agreement according to its terms. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999). The FAA includes a "savings clause," however, which states that an arbitration agreement may be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This includes generally applicable contract defenses such as fraud, duress, or unconscionability. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

## IV. DISCUSSION

### A. The Existence of a Valid Arbitration Agreement

"In California, general principles of contract law determine whether the parties have entered into a binding agreement to arbitrate," and the party seeking arbitration bears the burden of proving the existence of an arbitration agreement. *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal. App. 4th 836, 842 (2014) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)). Defendants argue that Plaintiff is required to arbitrate her claims pursuant to the "Mutual Binding Arbitration Agreement" (the "Arbitration Agreement") she signed as a condition of her employment with Decton. (Mot. 10–11.) Defendants assert that at the time she applied for employment with Decton, Plaintiff (1) registered for an account with an online application and staffing software management system, (2) created a unique username and password, and (3) electronically signed all of the documents and policies required of applicants and new hires, including the Arbitration Agreement. (Marquardt Decl. ¶¶ 6–9.)

Plaintiff challenges the validity of the Arbitration Agreement, claiming that she does not remember signing it. (Decl. of Alejandra Garcia ("Garcia Decl.") ¶ 3, ECF

No. 42-2.)² While Plaintiff recalls entering some personal information on a computer to apply to work for Decton, she does not recall setting up any online account or unique username and password. (*Id.* ¶ 7.) Plaintiff also searched her personal email account and could not find any record of creating an online account for Decton, although she acknowledges that she occasionally deletes emails. (*Id.* ¶ 8.) Plaintiff also argues that Defendants have failed to establish the authenticity of the Arbitration Agreement, because the Declaration of Nicole Marquardt refers to "Alejandro Garcia"—not "Alejandra" (the Plaintiff's first name)—as the signatory to that agreement. (Opp'n 3.) The Court notes, however, that the signature on the Arbitration Agreement does read "Alejandra Garcia." (ECF No. 31-5, Ex. 1 at 6 ("Arbitration Agreement").)

Plaintiff relies on *Ruiz v. Moss Bros.* for her position. In *Ruiz*, the California Court of Appeal upheld the trial court's finding that the defendant had failed to prove that the plaintiff had signed the arbitration agreement. 232 Cal. App. 4th at 843. In support of its initial motion, the defendant provided declaration testimony that only "summarily asserted" that the plaintiff was the person who signed the agreement. *Id.* The court noted that defendant did not explain "how [plaintiff's] printed electronic signature, or the date and time printed next to the signature, came to be placed on the 2011 agreement" or how it "ascertained that the electronic signature on the . . . agreement was 'the act of' [the plaintiff]." *Id.* at 844 (citing Cal. Civ. Code § 1633.9).

Defendants have done much more than "summarily assert" that Plaintiff was the person who signed the Arbitration Agreement. In support of their Motion, Defendants provide the testimony of Nicole Marquardt, who testified to the following:

- Each employee or prospective Decton employee, including Plaintiff, is required to create an online user account within the HR System, which in turn requires the employee or prospective employee to

---
² Defendants object to a majority of Plaintiff's Declaration. (ECF No. 47-2.) Because the Court does not rely on her declaration for any portion of its ruling on Defendants' Motion, it is unnecessary to rule on Defendant's objections.

- create her own unique username and secure password. (Marquardt Decl. ¶ 6.)
- Plaintiff was required to use her unique username and password when she signed into the HR System in order to apply for employment and to sign electronic forms and agreements. (*Id.* ¶ 7.)
- The only way for Plaintiff to access the Arbitration Agreement was by signing into the online HR System with the confidential, unique username and password she created. (*Id.* ¶ 8.)
- Plaintiff affirmatively indicated through the HR System her agreement to abide by the terms and conditions of the Arbitration Agreement and her electronic signature and the date was automatically inserted on the form. (*Id.*)

This level of explanation and testimony is sufficient to meet Defendants' burden of proof to authenticate the Arbitration Agreement and Plaintiff's assent to be bound by it. Plaintiff's testimony that she does not remember signing the Arbitration Agreement or accessing the online system is not sufficient to contradict Defendants' evidence. Additionally, the Court finds that a typo in Marquardt's Declaration with regard to Plaintiff's name does not undermine the remainder of the authentication. Therefore, the Court finds that Defendants have established that Plaintiff entered into a binding agreement to arbitrate.

**B.    Scope of the Arbitration Clause**

The Arbitration Agreement provides:
> I agree and acknowledge that the Company and I will utilize binding arbitration to resolve all disputes that may arise out of the employment context. Both the Company and I agree that any claim, dispute and/or controversy that either I may have against the Company (or its owners, directors, officers, managers, employees, agents and parties affiliated with its employee benefit and health plan) . . . or the Company may have against me, arising from, related to, or having any relationship or connection whatsoever with my seeking

employment by, or other association with the Company, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, and following the procedures of the California Arbitration Act. All claims must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.

(ECF No. 31-5, Ex. 1 at 5.) Plaintiff brings this wage-and-hour class action because Defendants allegedly underpaid Plaintiff during the course of her employment. These claims are covered under the scope of the arbitration clause, which requires arbitration of any claims "having any relationship . . . with [Plaintiff's] seeking employment" with Decton. (*Id.*)

**C.     Claims Against NRI are not Subject to Arbitration**

Defendants argue that NRI can enforce the Arbitration Agreement even as a nonsignatory, because NRI is either a third-party beneficiary of the agreement or Decton's agent. Defendants also argue that NRI can compel arbitration under equitable estoppel principles.

*1.     Third-Party Beneficiary and Agency*

Defendants claim that NRI is a third party beneficiary of the Arbitration Agreement, because the agreement states that disputes with "agents" of Decton must be arbitrated. (Mot. 19.) Defendants also state, in conclusory fashion, that "NRI as a customer of Decton and alleged co-employer of Plaintiff, is more than entitled to enforce the Arbitration Agreement against Plaintiff as an intended third-party beneficiary." (*Id.*)

At the outset, Defendants' argument NRI must be a third-party beneficiary, because the Arbitration Agreement requires arbitration between Plaintiff and agents of Decton strains credulity. A provision binding agents of a signatory to the terms of the agreement does not, in and of itself, create third-party beneficiary status. Even if it did, the Arbitration Agreement is silent as to whether NRI would be such a third-party beneficiary. Further, agency and third-party beneficiary status are two separate,

distinct relationships, requiring different showings and factual scenarios. Instead, Defendants conflate the two principles and fail to establish that NRI was either Decton's third-party beneficiary or its agent at the time the Arbitration Agreement was executed.

A nonsignatory to an arbitration agreement nevertheless may enforce it against a signatory when the nonsignatory is an "intended third party beneficiar[y] to an arbitration agreement." *Bouton v. USAA Cas. Ins. Co.*, 167 Cal. App. 4th 412, 424 (2008). However, "[t]he mere fact that a contract results in benefits to a third party does not render that party a 'third party beneficiary'"; rather, the parties to the contract must have intended the third party to benefit. *Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1290 (9th Cir. 2017) (quoting *Matthau v. Superior Ct.*, 151 Cal. App. 4th 593, 602 (2007)). Defendants have not demonstrated such an intent.

As Defendants acknowledge, NRI was Decton's customer. The Arbitration Agreement, however, is silent as to whether it extends to Decton's customers. The Arbitration Agreement specifically outlines groups of entities whose disputes with Plaintiff must be arbitrated, namely Decton's "owners, directors, officers, managers, employees, agents" and "parties affiliated with its employee benefit and health plans." (ECF No. 31-5, Ex. 1 at 5.) The Arbitration Agreement contains no mention at all of Decton's customers, and it does not confer any type of benefit on those customers. The California Supreme Court has observed that "the rule of construction expressio unius est exclusio alterius; i.e., that mention of one matter implies the exclusion of all others" is "an aid to resolve the ambiguities of a contract." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013) (quoting *Steven v. Fid. & Cas. Co. of New York*, 58 Cal. 2d 862, 871 (1962)). Decton could have drafted its Arbitration Agreement to cover its customers or NRI specifically. It did not. The Court concludes that NRI is not a third-party beneficiary of the Arbitration Agreement.

Defendants also argue that NRI, as Decton's agent, can compel arbitration. "A nonsignatory to an agreement to arbitrate may be required to arbitrate, and may invoke

arbitration against a party, if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory." *Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co.*, 129 Cal. App. 4th 759, 765 (2005). Defendants present no evidence establishing a preexisting confidential relationship between Decton and NRI. The declarations they submit from various employees are silent as to the nature of any purported agency relationship between the entities. Additionally, "[a]gency requires that the principal maintain control over the agent's actions." *Murphy*, 724 F.3d at 1232. Defendants have not shown that Decton or NRI ever had or maintained control over the other. Defendants fail to establish that an agency relationship ever existed between them.

### 2. *Equitable Estoppel*

"The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). Because generally only signatories to an arbitration agreement are obligated to submit to binding arbitration, equitable estoppel of third parties in this context is narrowly defined. *Murphy*, 724 F.3d at 1229.

Under California law, a party that is not otherwise subject to an arbitration agreement will be equitably estopped from avoiding arbitration only under two very specific conditions: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement. *Kramer*, 705 F.3d at 1128–29 (citing *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209 (2009)). This rule reflects the policy that a plaintiff may not, "on the one hand, seek to hold the

non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Murphy*, 724 F.3d at 1229 (citing *Goldman*, 173 Cal. App. 4th 220).

Defendants rely exclusively on the second condition, arguing that equitable estoppel applies because "the allegations against Decton and NRI arise out of the same facts and circumstances and are identical, intertwined and interdependent." (Mot. 20.) Defendants ignore, however, the requirement that the claims be "founded in or intimately connected with the obligations of the underlying agreement." *See Kramer*, 705 F.3d 1128–29. Here, the Arbitration Agreement is a two-page document that speaks only to the dispute resolution procedures should a dispute arise between Decton and Plaintiff. Plaintiff's claims are not based on, do not require interpretation of, nor are "intimately connected" with the terms of the Arbitration Agreement. In California, equitable estoppel is inapplicable where a plaintiff's "allegations reveal no claim of any violation of any duty, obligation, term or condition imposed by the agreements" containing the arbitration clause. *Murphy*, 724 F.3d at 1230 (quoting *Goldman*, 173 Cal. App. 4th 230). Therefore, equitable estoppel does not permit NRI to enforce the Arbitration Agreement.

Because the Court finds that NRI cannot compel arbitration and NRI is the only remaining Defendant in this action, it unnecessary to decide whether the Arbitration Agreement is unconscionable. The Court **DENIES** Defendants' Motion to Compel Arbitration. (ECF No. 41.)

///
///
///
///
///
///

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Motion to Compel Arbitration (ECF No. 41). The Court will issue a scheduling order.

**IT IS SO ORDERED.**

August 1, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**